[Civ. No. 5866.   Third Appellate District.—July 2, 1937.]

HERMAN J. STARK, Respondent, v. LEWIS F. BYING-TON, Appellant.

Lewis F. Byington, *in pro. per.,* and George K. Ford for Appellant.

A. J. Just for Respondent.

THE COURT.—This action was begun by the plaintiff to compel the specific performance of an alleged oral agreement to sell and convey a certain lot in the town of Downieville, known as lot 31, situate on the east side of Main Street, and in the event specific performance could not be had, and the defendant required to convey said lot to the plaintiff, then and in that case that the plaintiff recover judgment for damages against the defendant in the sum of $2,800. The plaintiff had judgment for damages in the sum of $1,060, and from this judgment the defendant appeals.

The complaint alleges that on the 21st day of June, 1931, the defendant sold said premises to the plaintiff (referring to lot 31, *supra*) for the sum of $300, payable in monthly installments, on an oral contract whereby he agreed to convey said premises to the plaintiff by a good and sufficient deed upon the payment by said plaintiff of the consideration aforesaid; that the defendant thereupon delivered the possession of the said premises to the plaintiff under said contract, and the plaintiff has ever since been, and still is in possession of the same under said contract; that the plaintiff has paid to the defendant the entire consideration aforesaid; that the plaintiff has made demand upon the defendant to execute a deed to said lot to the plaintiff, which demand the defendant has refused, and still refuses to comply with. It is further alleged that the plaintiff, while in possession of said premises under said contract, erected a building upon said premises and made improvements thereon to the value of $2,500. To this complaint the defendant interposed a demurrer to the effect that said complaint did not state a cause of action, and also that the complaint was uncertain as to the amount of the monthly installments, and when the same should be paid. While apparently good, according to the record there is no showing that the court ever acted upon the demurrer.

At the conclusion of the trial the court made the following findings:

"First: That on or about the 23rd day of June, 1931, plaintiff entered into negotiations with defendant for the purchase of Lot No. 31, east side of Main Street, town of Downieville, in Sierra County, from said defendant, and at said time the plaintiff paid ten dollars ($10.00) to Henry H. Meyer, who was acting as agent for the purpose of collecting and remitting said payment, for defendant, to bind the purchase. That subsequently, on or about the latter part of June, 1933, defendant orally agreed to sell to plaintiff said lot for the price of Three Hundred Dollars ($300.00) on terms of Twenty-five Dollars ($25.00) down and Ten Dollars ($10.00) per month until paid. That the plaintiff paid to the defendant, pursuant to said agreement, the sum of Three Hundred Dollars ($300.00), in accordance with the terms of said agreement.

"Second: That the defendant instructed the plaintiff to make said payments to Henry H. Meyer, as his agent. That plaintiff made said payments to the said Henry H. Meyer in accordance with said terms, except the first Twenty-five Dollars ($25.00) thereof, which the plaintiff paid directly to defendant by U. S. postal money order. That the said Henry H. Meyer was present when the defendant gave said instructions to plaintiff. That the said Henry H. Meyer received the cash payments from the plaintiff and remitted the same to the defendant by his personal check accompanied by letters explaining the purpose of said payments. That defendant received said checks and letters from the said Henry H. Meyer, acting as the agent for the defendant, to collect and remit said payments.

"Third: That on or about October 10, 1935, the plaintiff made the last payment constituting the balance in full for said lot. That upon receiving the last payment, the defendant repudiated the contract and returned said last payment to Henry H. Meyer. That the defendant has not returned any part of the purchase price to the plaintiff; that defendant made no other prior repudiation of said contract.

"Fourth: That plaintiff went into possession of said lot on or about the last week in June, 1933; that during the summer of 1934, plaintiff made improvements upon said lot to the value of Seven Hundred Fifty Dollars ($750.00).

That plaintiff made said improvements in good faith in reliance upon said contract.

"Fifth: That the defendant was one of the owners of said lot, and agent for his co-owners in said lot; that the said Henry H. Meyer was the agent of defendant, for the purpose of collecting and transmitting the moneys aforesaid.

"Sixth: That the said Henry H. Meyer acted as agent for the defendant, knew of the improvements of the property at the time said improvements were made.

"Seventh: That defendant and his co-owners sold the said lot to one Leavitt for the sum of Four Hundred Dollars ($400.00) in July, 1934."

These findings are challenged by the appellant as not being supported by the testimony. As to some of the findings which are determinative of this cause, the challenge of the appellant seems to be well taken, as shown by the testimony of the plaintiff. His testimony is to the effect that some time in June, 1931, he called upon Mr. Byington at his office in San Francisco, and stated to Mr. Byington that he wanted to buy the lot, to which Mr. Byington replied, "I can't give you any price on it at the present time; I will have to see the folks, but I will be up your way in about a week and will see you then." The witness further testified that he did not see the defendant in Downieville in June, 1931, but shortly after did see Mr. Meyer, and that Mr. Meyer said to him that he could have the lot for $300 at any time, and that he thereupon paid Mr. Meyer the sum of $10.

The record shows that Mr. Henry H. Meyer had been collecting rents and paying taxes for the Byington estate for a number of years, and that the lot in question was a part of the Byington estate, and was owned by the heirs thereof.

There is no evidence in the record that Henry H. Meyer was authorized to receive the $10 as a deposit on the purchase price of said lot, nor is there any evidence in the record to the effect that the defendant either authorized Henry H. Meyer or told Henry H. Meyer that the lot could be purchased for $300, and we may state at this point that there is nothing in the record which shows that the defendant ever authorized Henry H. Meyer or told Henry H. Meyer, or ever told the plaintiff that the lot could be purchased for $300. Nothing further appears in the record in relation to any transactions concerning said lot until some time during the summer of 1933, when the defendant was attending a Native

Sons' meeting in Downieville. The plaintiff testified that he met Mr. Byington and the following took place. The plaintiff's testimony as to this occurrence is in the following words: "I met Mr. Byington coming down from the Plaza and Mr. Meyer was with him. I said, 'Mr. Byington, is it all right to pay $25.00 down upon this lot and $10.00 a month afterwards?' And he said, 'That is fine with me; fix it up with Henry.' I paid $25.00 to Mr. Meyer, and then $10.00 a month after that." This conversation is denied by both the defendant and Mr. Meyer. Mr. Meyer testified that shortly thereafter the plaintiff called and had a conversation with him about the monthly payment plan. His testimony is as follows: "Q. Do you recall anything about receiving any word from Mr. Byington about the price of the lot? A. No. Mr. Byington did not tell me the price of the lot, but Mr. Stark did tell me. The best I can remember, Mr. Stark told me that he was buying the lot from Mr. Byington for $300.00, and that it was to be paid for in monthly payments of $10.00 a month. That was in 1933."

Our attention has not been called to any testimony in the record showing that any oral agreement or any agreement whatsoever was ever entered into between the plaintiff and the defendant fixing the selling price of the lot. All that appears in the record is the mere statement of the plaintiff himself to Mr. Meyer that he was buying the lot for $300. The plaintiff did not testify that the defendant ever fixed any price on said lot, or offered to sell it to him for the sum of $200, or any other sum.

There is nothing in the record authorizing Mr. Meyer to state to Mr. Stark that the purchase price of the lot was $300. While Mr. Meyer did act for the Byington estate and for the Byington heirs in making collections of rent on other property and paying taxes assessed to the Byington estate, there is not a scintilla of evidence in the record showing that Henry H. Meyer had any authority whatever to make sales of any property, or to make sale of lot 31 for any sum whatsoever. Any authority whatever on the part of Henry H. Meyer to sell the lot in question would necessarily come under subdivision 4 of section 1624 of the Civil Code, and would necessarily have to be in writing.

Subsequent to what we have just stated, it appears that the plaintiff continued to make payments to Henry H. Meyer, and Meyer sent his personal check to the defendant covering

the different amounts paid by the plaintiff, accompanying said checks with a statement that it was paid by the plaintiff on account of the purchase price of the lot in question. These checks were never cashed, and it appears were not returned to Henry H. Meyer until a check covering the final payment was forwarded to the defendant by Henry. H. Meyer, whereupon that check was immediately returned to Mr. Meyer, and subsequently all the other checks were returned by the defendant to Mr. Meyer, including also the money order referred to in the findings.

The court found that the plaintiff went into possession of the lot in question on or about the last week in June, 1933, and that during the summer of 1934, plaintiff made improvements upon said lot to the value of $750. The record fails to show any testimony that either Henry H. Meyer or the defendant knew anything about the plaintiff taking possession of the lot, nor is there any testimony in the record showing that either Henry H. Meyer or the defendant ever granted any permission to the plaintiff to go upon and take possession of the lot numbered 31, *supra*.

The court further found that Henry H. Meyer knew of the improvements on the property at the time said improvements were made. This finding is not supported by the testimony. The only testimony on this subject is that of Henry H. Meyer, who stated that he did not see and did not know anything about the improvements made on lot 31, *supra*, until after the same had been made. It may be here stated that the improvements were not made by the plaintiff. The record does show that some time during the time herein referred to the plaintiff did lease certain property to a certain mining company. This lease was in writing but did not include lot 31. Under the terms of the lease the improvements made on the lots were to revert to the owner of the lots in the event that the lease was forfeited. The company to which the lease was made assigned the lease to a company known as the Edgehill Company. This was the company that erected the building on lot 31 valued by the court at $750.

The plaintiff testified that it was orally understood that the conditions of the lease should apply to lot 31, but that the lot was not included in the lease for the reason that he had no title thereto.

It further appears from the record that the improvements made upon lot 31 were made after lot 31 had been sold to a man by the name of Leavitt, whose affidavit on motion pending trial states that he gave permission to the Edgehill Company to build on the lot.

That taking possession of a lot without the consent or knowledge of the vendor does not constitute part performance of an oral contract relative to the purchase and sale of real property we need only cite the case of *Fritz v. Mills*, 170 Cal. 449 [150 Pac. 375]. There is nothing in the record indicating that the defendant was ever informed that the plaintiff had taken possession of lot 31, or was making, or had made any improvements thereon, or that any improvements were being made; that the payment of the money in installments referred to herein, and the transmission of the same to the defendant would constitute corroborative testimony of an oral agreement of purchase and sale, but as we have shown herein the record is absolutely wanting in testimony showing that an agreement of purchase and sale had been made, or that there was a sale price for said premises, other than as testified to by the plaintiff himself, without showing any agreement thereto or any words used by the defendant tending to fix the purchase price of the lot in question.

That the testimony of the plaintiff fails to establish the right to specific performance, we need only cite, 23 California Jurisprudence, page 465, section 34, where it is said: "Certainly one who claims a right to a conveyance of land under a verbal contract on the ground of part performance must make out by clear and satisfactory proof the existence of the contract as alleged by him. Furthermore, the acts relied upon must be unequivocally referable to the contract; it is not enough that such acts are evidence of some agreement; they must be satisfactory evidence of the particular contract charged in the complaint; they must clearly appear to have been done in pursuance of the contract and to result therefrom and not from some other relation, and must have been done with the consent and knowledge of the other party."

Where the testimony shows an agreement, then and in that case it is a question of fact for the court to determine whether the acts are in pursuance of such agreement, but taken at its best the testimony of the plaintiff only justifies

the inference that the plaintiff, by making the payments as set forth in the record, would be entitled to have conveyance of the lot made to him irrespective of any agreement on the part of the defendant to convey said lot to him, and that said defendant never agreed to sell lot to the plaintiff for the sum of $300, or any other sum.

The judgment is reversed.